# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 21-14519

_____

JOSEPH CLIFTON SMITH,

                              Petitioner-Appellee,

*versus*

COMMISSIONER, ALABAMA DEPARTMENT OF CORRECTIONS,

                              Respondent-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:05-cv-00474-CG-M

_____

Before WILSON, JORDAN, and ROSENBAUM, Circuit Judges.

ORDER:

The State's motion to stay the issuance of the mandate pending a petition for writ of certiorari fails to show "that there is good cause for a stay." Fed. R. App. P. 41(d)(1); *see also, e.g.*, *Nara v. Frank*, 494 F.3d 1132, 1133 (3d Cir. 2007) (observing that courts award such relief in "exceptional cases"). We therefore deny the motion.

To establish good cause for a stay, "there must be a likelihood of irreparable harm if the judgment is not stayed." *Phillip Morris USA Inc. v. Scott*, 561 U.S. 1301, 1302 (2010) (Scalia, J., in chambers). The State invokes two reasons in service of its argument that it will suffer irreparable harm absent a stay. Neither is persuasive.

First, the State asserts that it "would likely need to resentence" Smith unless we stay our judgment affirming the district court's order vacating his death sentence. Ala.'s Mot. at 18. "Absent a stay," the State complains that it will "be forced to expend resources to conduct a new sentencing hearing for a murder that took place in the last century." *Id.* at 20. But even the State's own motion concedes that resentencing Smith will require minimal resources. As the State explained, "Because Smith's conviction of a capital crime is not disputed, the only sentence he could receive would be life without parole." *Id.* at 20.

Second, the State also claims that its certiorari petition risks becoming moot "if Smith's sentence is vacated and he is resentenced by the state circuit court to comply with this Court's

21-14519               Order of the Court                3

ruling." *Id*. at 18. But even if Smith's death sentence is vacated and he is sentenced to life without parole before the Supreme Court resolves the State's petition for writ of certiorari, "neither the losing party's failure to obtain a stay preventing the mandate of the Court of Appeals from issuing nor the trial court's action in light of that mandate makes the case moot." *Kernan v. Cuero*, 138 S. Ct. 4, 7 (2017). Rather, the Supreme Court could still "undo what the *habeas corpus* court did" if it so desires. *Id*. (quoting *Eagles v. United States ex rel. Samuels*, 329 U.S. 304, 308 (1946)).

★ ★ ★ ★

"A stay is not a matter of right," but "is instead 'an exercise of judicial discretion.'" *Nken v. Holder*, 556 U.S. 418, 433 (2009) (quoting *Virginian Ry. Co. v. U.S.*, 272 U.S. 658, 672–73 (1926)). The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id*. at 433–34. That is a "heavy burden," *Scott*, 561 U.S. at 1302. And it is one the State has failed to carry here.

The State's motion not only fails to establish good cause for a stay, but it also mischaracterizes the panel opinion. According to the State's motion, the panel opinion applied "a presumption that an individual's IQ falls at the bottom of his IQ range." Ala.'s Mot. at 15 (quoting, allegedly, *Smith v. Comm'r, Ala. Dep't of Corr.* ("*Smith II*"), 67 F.4th 1335, 1348 (11th Cir. 2023)).

But the panel opinion did not apply a presumption that an individual's IQ score falls at the bottom of his IQ range; the panel opinion presumed that an individual's "IQ score *could*" fall at the

bottom of his range of admissible IQ scores. *Smith II*, 67 F.4th at 1345; *see also id*. at 1346 (noting that the district court did not find the State's expert's testimony "strong enough" to throw out Smith's lowest IQ score, leading the district court to find that Smith's "IQ *could be* 'as low as 69'" (citations omitted)). So if the bottom of a person's range of admissible IQ scores is equal to or less than 70, that individual *could* have significantly subaverage intellectual functioning. *E.g.*, *Ex parte Perkins*, 851 So. 2d 453, 456 (Ala. 2002) (defining significantly subaverage intellectual functioning as an IQ of 70 or below). When a district court finds that an individual *could* have significantly subaverage intellectual functioning, binding Supreme Court precedent requires the district court to move on and consider other evidence of the individual's intellectual disability (or lack thereof). *See Smith II*, 67 F.4th at 1347 (first citing *Hall v. Florida*, 572 U.S. 701, 707, 724 (2014); then citing *Moore v. Texas*, 581 U.S. 1, 14 (2017)). And we review "a district court's finding that an individual is intellectually disabled" "for clear error" only. *Id*. at 1344.

The State's distortion of the panel opinion further undermines its claim "that there is good cause for a stay." Fed. R. App. P. 41(d)(1).

For these reasons, the State's motion to stay the issuance of the mandate pending a petition for writ of certiorari is DENIED.